IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
NORTHWESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Criminal No. 4:10-cr-070-02 |
| | ) | |
| v. | ) | UNITED STATES' RESPONSE TO |
| | ) | DEFENDANT'S MOTION FOR |
| DUSTIN MORSETTE, | ) | JUDGMENT OF ACQUITTAL AND NEW |
| a/k/a DUSTY JAMES MORSETTE, | ) | TRIAL |
| | ) | |
| Defendant. | ) | |

The United States of America, by and through its attorney, Timothy Q. Purdon,

United States Attorney for the District of North Dakota, and Rick L. Volk, Assistant

United States Attorney, hereby submits this response to the Defendant Dustin Morsette,

a/k/a Dusty James Morsette's motions for judgment of acquittal and new trial. The

United States resists each of these motions in that the evidence presented at trial was

sufficient to sustain the guilty verdicts as to each and every count of conviction, and no

miscarriage of justice has occurred. Therefore, the United States requests that the

motions be denied in all respects.

## Rule 29 Motion for Judgment of Acquittal

Pursuant to Rule 29 of the Federal Rules of Criminal Procedure, Morsette has

renewed his motion for judgment of acquittal only with respect to Counts 1 - 6, 14, 17,

and 21. Counts 1 - 4 pertain to the sexual abuse of R.U. Counts 5 - 6 pertain to the

sexual abuse of P.D. Count 14 pertains to the sexual abuse of A.W. Count 17 pertains to

the use or employment of E.L. in drug operations.  Count 21 pertains to sex trafficking of

A.R.  There was sufficient evidence for the jury to convict on each of these offenses.

A motion for judgment of acquittal should be granted only if there is no

interpretation of the evidence that would allow a reasonable jury to find the defendant

guilty beyond a reasonable doubt.  United States v. Dupont, 672 F.3d 580, 582 (8th Cir.

2012).  In making this determination, a court does not weigh the evidence or assess the

credibility of the witnesses, as the jury has the responsibility of resolving conflicts or

contradictions in testimony, and any credibility issues must be resolved by the court in

favor of the verdict. United States v. Augustine, 663 F.3d 367, 373 (8th Cir. 2011).  A

trial court has neither the duty nor the authority to grant a motion for acquittal based on

the credibility of witnesses.  United States v. Kirkie, 261 F.3d 761, 268 (8th Cir. 2001).

With respect to sexual offenses, a victim's testimony alone can be sufficient to prove the

offense.  See United States v. White Bull, 646 F.3d 1082, 1087 (8th Cir. 2011) ("[A]

victim's testimony alone can be sufficient to prove aggravated sexual abuse.")  Further,

the fact that there is no physical evidence of abuse does not prevent a finding that the

evidence was sufficient for conviction.  United States v. Rojas, 520 F.3d 876, 881-82 (8th

Cir. 2008); Kirkie, 261 F.3d at 768.

Morsette's contentions in his Rule 29 motion focus almost exclusively on the

credibility of the victims and witnesses who testified in this case.  He suggests the

evidence is insufficient as to Counts 1 - 4 and 5 - 6 because, in part, those victims denied

2

abuse to others (their mothers and/or investigators).  This provides no support for overturning the jury's verdict.  See United States v. Rayl, 270 F.3d 709, 713 (8th Cir. 2001) (defendant's argument that evidence was insufficient because victim's testimony lacked credibility because she admitted she lied to her grandparents and did not take opportunity to escape from defendant rejected;  witness credibility is virtually unreviewable on appeal because it is preeminently the job of the finder of fact).  Both R.U. and P.D. explained their reasons for denying abuse occurred.  R.U. testified that she denied she had been sexually abused to her mother as she was trying to protect her parents and her family from the shame, embarrassment, and pain of knowing something like this had happened to their daughter.  She further said that her mother had enough stuff in her life to deal with, and she did not want to make it worse by disclosing the abuse to her. R.U. also explained that she did not report the matter to the police as Morsette had threatened to kill her if she did.  This testimony was consistent with R.U.'s declaration during her forensic interview that she would sue the forensic interviewer if she told anyone about her disclosures.  P.D. explained she lied because she was afraid of retaliation as she had been jumped by three others who warned that they would do so again if P.D. snitched on Morsette and Medicine Bird Morsette.   Both of these explanations were for the jury to weigh in assessing the credibility of the two victims. The jury believed their testimony.  It is not for this Court to second-guess the jury's determination in a Rule 29 motion.

3

Morsette's contention that none of the offenses were corroborated by physical evidence is equally deficient.  Medical evidence of sexual abuse is not required for conviction.  Rojas, 520 F.3d at 881-82.  As in Rojas, Dr. Kimberly Krohn testified that she examined two of the victims, P.D. and S.H., and made findings that there was no acute trauma to either of their genital areas; however, Dr. Krohn explained that such findings were not inconsistent with prior penetration of the children's vaginal areas and described why this was so.  While Dr. Krohn did not examine each and every sexual assault victim, her testimony about the reasons why medical evidence of abuse would not be found months after an incident was generally applicable to each other victim.  The jury was free to accept the physician's testimony and find abuse based on the victim's and witnesses' testimony, notwithstanding the absence of medical evidence.

As to Counts 1 - 4, R.U. testified that she engaged in vaginal intercourse with Morsette more than five times, all of which except one occurred at Morsette's house in Sanish, which FBI Special Agent Sterling Mueller testified is located within the boundaries of the Fort Berthold Indian Reservation.  R.U. explained that Morsette's penis penetrated her vagina on these occasions.  R.U. further explained that there was one occasion where Morsette forcibly inserted his penis into her anus in Morsette's bedroom at the Sanish residence.  R.U. testified that Morsette got mad and hit, pushed, and threw her down while she tried to push him away, but she was unable to stop him from engaging in the anal sex.  R.U. described that all of these acts occurred in the fall of 2009

4

when she was 14 - 15 years old.  Morsette was 20 years old at this time.  R.U.'s testimony was corroborated by G.S., who testified that she heard R.U. and Morsette engaging in sexual acts in Morsette's bedroom.  G.S.'s testimony is corroborative despite her inability to describe what specific sexual acts were occurring as it nevertheless indicated R.U. and Morsette were involved in a sexual relationship.  R.U.'s testimony was also corroborated by A.R.'s testimony of similar, forcible sexual acts of anal intercourse perpetrated on her by Morsette.  See Rule 413, F.R.Evid.  Finally, R.U.'s testimony was corroborated by other witnesses testimony regarding Morsette's motivation and planning involving gang membership and activity, matters wholly ignored by Morsette in his motion.  R.U. testified she was recruited to be a member of the gang by Morsette, and that she was told to do anything that Morsette said, including sex.  R.U. had a tattoo and burn marks she (and others) testified were signs of membership in the gang.  Others witnesses, such as M.A. and P.D., testified that Morsette specifically referred to engaging in sexual acts with him as part of the gang membership as well.

As to Counts 5 - 6 involving P.D., the evidence was equally sufficient for conviction.  P.D. testified the event involved in these charges occurred when she was 12 years old (P.D. turned 13 in June 2010).  From June 2009 - June 2010, Morsette was 20 years old.  P.D. testified that she and others were at Morsette's residence in Sanish, where she consumed a great quantity of alcoholic beverages and marijuana over a two day period such that she blacked out, awakening to find herself lying in Medicine Bird

Morsette's bed without any clothing on.  Others who testified, including Medicine Bird Morsette, J.S., and J.Y.F., corroborated P.D.'s account of her heavy intoxication.  Each of these individuals testified to either seeing and/or hearing a sexual act taking place between Morsette and P.D. in this bedroom.  Medicine Bird testified that he observed the door to his bedroom banging back and forth, and then observed Morsette walk out with a condom hanging off him.  Morsette then commented that P.D. was easy and threw the condom at J.S. or J.Y.F.  J.Y.F. testified that he saw Morsette walk into the bedroom where P.D. was laying.  He heard P.D. and Morsette having sex as he heard P.D. moaning.  He then saw Morsette walk out of the room with a condom on.  J.Y.F. went into the bedroom and gave P.D. her pants.  J.S. testified that he observed Morsette enter the bedroom after commenting about wanting to engage in a sexual act.  He also saw the door to the bedroom banging back and forth, and looked through a hole in the door and saw Morsette and P.D. having sex.  He observed Morsette exit the bedroom and throw a condom around asking which one of them was next.  J.S. said that he went into the room and P.D. was barely awake at that point and her clothes and underwear were lying on the floor.  Finally, this testimony was corroborated by Francene Azure, who testified that she confronted Morsette about engaging in sexual acts with young girls after being advised of this conduct.  Azure testified that Morsette responded by saying the girls were already having sex so it didn't matter, they liked it and would do it again.

With respect to Count 14, A.W. testified that she had vaginal intercourse with Morsette multiple times at the Sanish residence when she was 15 years old.  She and Morsette engaged in anal intercourse one time after she had turned 16 in October 2009. Morsette argues the evidence was insufficient for conviction on Count 14 simply because A.W. was not believable.  He argues that A.W. insisted the sexual acts occurred during 2007 - 2008 when she and T.G.B. would visit Morsette and Medicine Bird Morsette at the Sanish residence, but Medicine Bird had been in custody until August 2008 so it was impossible to have occurred in 2007.  A.W.'s trial testimony was not as Morsette portrays it.  A.W. initially testified that she was having sexual intercourse with Morsette multiple times when she was 15 years old and turning 16.  A.W. turned 15 in October 2008.  When asked on cross-examination if this was in 2007 - 2008, A.W. said she didn't remember exactly when it was but again stated it was when she was 15 - 16 years old.  When asked by the Court the general time frame when A.W. would have had contact with Morsette, A.W. testified that she stated between 2007 - 2008 and continuing into 2009.  A.W. never testified that she was with T.G.B. on every occasion she was at the Morsette household. Further, Medicine Bird testified he was not in custody during all of 2007, only from June 2007 to August 2008.  Dustin Morsette testified that he had lived at this residence from when he was 15 - 16 years old, except for an unknown period of time when he moved out, returning in mid-2008 before Medicine Bird returned to the home.  Dustin Morsette was therefore at the home during the time frames testified to by A.W., and it was not

7

impossible for A.W. and Dustin Morsette to have engaged in sexual acts at the home during this time frame.  All of this was before the jury, and they made their credibility determination as to A.W.'s testimony.  They believed her.

To the extent Morsette is arguing the conviction is inconsistent with the time frame alleged in the indictment, time is not an essential element of this offense.  See United States v. Youngman, 481 F.3d 1015, 1019 (8th Cir. 2007) (time is not an essential element of a sexual offense unless the statute makes it so).  Title 18, United States Code, Section 2243(a), does not make time an essential element of the crime of sexual abuse of a minor.  The only requirement is that the government prove the victim was at least 12 years of age but not yet 16, and was at least 4 years younger than the defendant.  The evidence in this case did so.

With respect to Count 17, Morsette alleges there was no evidence that he employed, hired, persuaded, used, induced or enticed E.L. to engage in drug operations, arguing that the evidence only demonstrated that E.L.'s mother did so.  E.L.'s testimony was to the contrary and did establish the elements of the offense.  E.L. testified that she went to Morsette's home in Sanish between 20 - 30 times starting when she was 12 years old.  During these times, E.L. assisted in putting marijuana in baggies to sell.  She did this more than one time.  E.L. testified that Dustin Morsette would bring the marijuana into the room, and then put it away after the marijuana was packaged for sale.  E.L. said that both her mother and Medicine Bird also participated in this packaging.  E.L. further

8

testified that she sought buyers for the marijuana at her school, and when she found buyers she would tell her mother who drove E.L. and the buyer to the Sanish residence to make the purchase.  E.L. testified that she heard Morsette talking about a gang, that the gang involved drugs, and that Morsette asked her to join the gang.  The essential elements of this offense required the government to prove Morsette knowingly and intentionally, among other things, used E.L. to distribute marijuana, possess marijuana with intent to distribute, or conspire to do so.  E.L.'s testimony that she assisted in packaging marijuana for sale that Morsette brought into the house alone establishes these elements.

With respect to Count 21, Morsette argues the evidence was insufficient that the crime of sex trafficking occurred within Indian country.  A.R. testified that the first incident of prostitution occurred at the Four Bears Casino in New Town, which FBI Special Agent Sterling Mueller testified is within the exterior boundaries of the Fort Berthold Indian Reservation.  She testified that there were multiple other occasions of prostitution that occurred at this same location.  A.R. testified that Morsette had forcibly raped her prior to the initial prostitution event, and that she had been hit by Morsette and had Morsette threaten to send nude pictures of her to her father if she did not comply with Morsette's demands.  At the time of the initial prostitution event, A.R. testified that she said no but Morsette told her to go do it and she feared being hit if she did not comply.  A.R. was able to describe numerous incidents of physical abuse of her by Morsette during the course of their relationship, including a second forcible rape with a knife, being

choked to the ground by Morsette in Stanley, being punched in the face causing her to strike a car door, and being pushed out of a car.  A.R. testified that she continued to engage in prostitution after the first event because of the physical abuse, threats of physical abuse, and threats of sending the photographs.  See United States v. Paris, 2007 WL 3124724 (D. Conn. 2007) (District Court, in ruling on defendant's post-trial Rule 29 and Rule 33 motions finds sufficient evidence of use of force, fraud or coercion from testimony that defendant withheld heroin to make victim sick, and defendant hitting victim when she refused to do a call which caused victim fear of defendant).

The testimony that the prostitution conduct expanded beyond the boundaries of the Reservation does not somehow negate the testimony that the prostitution occurred within the boundaries of the Reservation.  See e.g. United States v. Van Chase, 137 F.3d 579, 582 (8th Cir. 1998) ("Jurisdiction over an offense under 18 U.S.C. § 1153 exist if any portion of the crime takes place within Indian country.")  A.R. testified to sufficient facts to establish the prostitution activity was initiated through force and coercion and continued to be so thereafter.  Thus, any and all acts of prostitution were done through force or coercion, including those within Indian country, and the evidence was sufficient for the jury to convict Morsette on this count.

## Rule 33 Motion for New Trial

Morsette has moved for a new trial pursuant to Rule 33 of the Federal Rules of Criminal Procedure.  The motion refers to all counts of conviction.  Again, Morsette argues that the government's witnesses were not believable as the entire basis for his motion.

Rule 33(a) of the Federal Rules of Criminal Procedure provides that upon a defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires.  When faced with a motion for new trial, unlike a motion for judgment of acquittal, a district court is permitted to weigh the evidence and judge witness credibility for itself in determining if there may have been a miscarriage of justice such that a new trial is required.  United States v. Lewis, 557 F.3d 601, 612 (8th Cir. 2009).  Motions for new trial based on the weight of the evidence generally are disfavored, and the district court's authority to grant a new trial should be exercised sparingly and with caution.  Id.  The denial of a motion for new trial is reviewed on appeal for abuse of discretion.  Id.  The fact that the government's case is based upon circumstantial evidence does not by itself necessitate a new trial.  United States v. Davis, 534 F.3d 903, 913 (8th Cir. 2008).  Further, the defendant's ability to point to the government's witnesses' credibility problems does not establish that the evidence is so lacking in probative force that a new trial is warranted.  Id.  What the district court thinks of a defendant's guilt or innocence is of little import if there is sufficient evidence to

support the jury's guilty verdict.  Id., citing United States v. Fazio, 487 F.3d 646, 656 (8th Cir. 2007).  The jury watched and heard each witness testify, viewed the documentary evidence, and came to a conclusion about who and what to believe.  Id.  Even recantation of sexual abuse allegations after trial has not warranted granting of a new trial under Rule 33, F.R.Crim.P., where the recantation is otherwise explained.  See United States v. Miner, 131 F.3d 1271, 1274 (8th Cir. 1997).

Here, Morsette continues the same theme he argued to the jury - - that the victims are all troubled youth who cannot be believed.  Morsette further argues that the delay in reporting the abuse suggests lack of credibility.  Morsette is simply asking this Court to rule that troubled youth cannot be victims of sexual abuse.  He fails to recognize any of the explanations provided by the victims and witnesses.  The jury was provided with many explanations why the victims did not immediately report the sexual abuse and/or denied the abuse to others.  Those explanations included fear of harm by Morsette, fear of retaliation by others, and shame and embarrassment.  Morsette's own expert witness acknowledged it is very common that sexual abuse is not immediately reported.  The jury heard and assessed the explanations, and concluded that the victims were credible.  For this Court to grant Morsette's motion for new trial based on a miscarriage of justice, the Court would have to conclude that the explanations given were entirely unbelievable.  To the contrary, the explanations were very reasonable, especially in light of the multiple independent sources of information.

Many of the victims and/or witnesses had no connection to each other, but gave similar accounts of threats or coercion by Morsette or those connected to him.  For example, A.R., who testified to physical abuse and coercion by Morsette, did not know M.A., who testified that Morsette threatened to come after her and her family if she told about the gang activity.  R.U., who testified that Morsette threatened to kill her if she went to the police about the activity he was engaging in, did not know A.S., who testified that Morsette told her not to talk about the activity going on at the Sanish house.  Troy Yazzie, who testified that Morsette told him about a book on mind control where he would utilize a leader to manipulate girls, did not know S.H., who testified about Morsette's threat of rape by a gang leader from California to manipulate her into engaging in a sexual act.  The variety of independent sources, each of whom gave a similar account, lend a high degree of credibility to the explanations for denial and/or failure to report given by the various victims.

There are other reasons for this Court to give great weight to the jury's determination of credibility of the victims and witnesses.  In his motion, Morsette complains that the sexual abuse of P.D. is not believable, in part, because two witnesses to the event (J.Y.F. and J.S.) were high and intoxicated.  J.Y.F. and J.S. testified not only to the sexual abuse of P.D. by Dustin Morsette, but also the sexual abuse of P.D. by Medicine Bird Morsette.  In his testimony to the jury, Dustin Morsette acknowledged that the sexual event between P.D. and Medicine Bird Morsette had occurred as described by

J.Y.F. and J.S.  Thus, Morsette seemingly would have this Court find that J.Y.F. and J.S. were believable with respect to the events concerning Medicine Bird Morsette, despite their intoxication, but were not believable in their testimony about Dustin Morsette even though those events occurred within minutes of each other.  This type of attack on credibility is hardly one which demonstrates evidence so lacking in probative force such that a miscarriage of justice has occurred.

Morsette's credibility attack on Dakota Jore is equally fallible.  He claims Jore's testimony that he was instructed by Morsette to ask A.R. to lie during a conversation via a cellular telephone should not be believed because no cellular phone was ever found. However, the government submitted evidence of a photograph taken of Morsette in the Lake Region Correctional Center that was forwarded to Jore and thereafter to A.R.  The existence of this photograph, which was transmitted first to Jore's cell phone, clearly corroborates Jore's testimony that a cellular telephone smuggled into the jail facility actually existed.

As for the drug offenses, Morsette's attempted credibility attack on Francene Azure's testimony does little to nothing in demonstrating a miscarriage of justice.  All Morsette notes is that Azure's testimony about her daughter's drug use in front of Azure was inconsistent with E.L.'s testimony.  He completely ignores the testimony of G.B., J.W., and E.L., each of whom specifically testified about their roles in the drug operations, from selling marijuana directly provided to them by Morsette, to packaging

14

the marijuana for sale at Morsette's residence.  Other witnesses testified that Morsette

asked them to sell marijuana for him, including M.A., R.U., G.S., A.R., and Lebray Heart.

Morsette's allegation in his motion that the evidence, even if believed, only established a

conspiracy between Medicine Bird Morsette and Francene Azure is entirely ignorant of

the evidence submitted at trial and a wholly frivolous allegation.

Morsette's claim that the evidence was lacking with respect to the sex trafficking

count also ignores most of the testimony of A.R.  While it is accurate that Francene Azure

made the initial call to arrange the first prostitution event with Mark Seimers that A.R.

participated in, A.R. testified that it was Morsette, not Azure or anyone else, who directed

her to perform the job.  A.R. testified that she told Morsette no, but he told her to get out

of the car and go do the job.  A.R. testified that she did so because she feared Morsette

would hit her.  A.R. described a multitude of events where Morsette had physically and

sexually abused her, both prior to the first prostitution event and thereafter, from forcible

rapes to physical assaults where Morsette choked her to the ground and asked her if she

wanted to die.  Under 18 U.S.C. § 1591, the government need not link each of the threats

made or action taken against a victim to specific acts of commercial sex she performed.

If the victim was threatened with or made to suffer certain consequences, either as

punishment or to create a climate of fear that overcame her will and compelled her

service, that is sufficient.  See e.g. United States v. Warren, 772 F.2d 827, 833-34 (11th

Cir. 1985) (under related statute, 18 U.S.C. § 1584, various forms of coercion may

constitute unlawful holding of person in involuntary servitude;  use, or threatened use, of physical force to create a climate of fear is the most grotesque example of such coercion); United States v. Booker, 655 F.2d 562, 566 (4th Cir. 1981) (assaults and threats created a climate of fear).  The fact that a victim has an opportunity to escape does not preclude conviction where the defendant has placed the victim in such fear of physical harm that she is afraid to leave.  Warren, 772 F.2d at 834.  Although A.R. testified that she did not live with Morsette, she also testified that she feared physical harm from him, and on the one occasion she threatened to go to the police, Morsette arrived on her doorstep telling her to come out.  A.R. testified that she feared Morsette would beat or hit her.  This testimony sufficiently explained why A.R. did not report the activity to police or her parents.  The jury had the opportunity to assess A.R.'s demeanor and credibility.  It was entirely reasonable for the jury to accept this explanation.

Finally, Morsette's motion completely ignores all of the gang evidence submitted at trial.  This evidence demonstrated an overarching plan and motive for Morsette to commit the crimes he was charged with.  Multiple witnesses testified that Morsette recruited them into his gang and branded them with a tattoo and burn marks as symbols of gang membership.  Multiple witnesses testified that Morsette advised them they would have to sell marijuana and/or engage in sexual acts as part of the gang.  The gang was utilized substantively by Morsette to commit the sex and drug offenses as well.  A.R., R.U., and S.H. each testified that Morsette utilized the gang as a means of committed

16

sexual offenses against them.  R.U. testified Morsette told her she had to comply with his demands, including sex, as a member of the gang.  S.H. testified Morsette used the threat of the gang leader coming from California to rape her if S.H. did not comply with his demand to allow him to engage in a sexual act with her.  A.R. testified Morsette justified the second anal rape of her as a punishment directed by the gang leader.  The similar accounts of Morsette's recruitment and explanation of gang rules from multiple independent sources strengthens the probative force of the victims' and witnesses' testimony.

In summary, Morsette has failed to demonstrate that the weight of the evidence weighs so heavily against the verdicts that a miscarriage of justice may have occurred. This is not one of those exceptional cases where the Court should utilize its limited authority to substitute its judgment for that of the jury.  Based upon the foregoing, Morsette is not entitled to a new trial for any reason, and his motion for the same should be denied in all respects.

Dated this 2nd day of May, 2012.

TIMOTHY Q. PURDON
United States Attorney


By:     */s/ Rick L. Volk*
        RICK L. VOLK
        Assistant United States Attorney
        P. O. Box 699
        Bismarck, ND  58502-0699
        (701) 530-2420
        N.D. Bar Board ID No. 04913
        Attorney for United States

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | Criminal No.  4:10-cr-070-02 |
| Plaintiff, | ) | |
| | ) | <u>CERTIFICATE OF SERVICE</u> |
| -vs- | ) | |
| | ) | |
| DUSTIN MORSETTE, | ) | |
| a/k/a DUSTY JAMES MORSETTE, | ) | |
| | ) | |
| Defendant. | ) | |

I hereby certify that on May 2, 2012, the following documents:

1.    United States' Response to Defendant's Motion for Judgment of Acquittal and
New Trial

2.    Certificate of Service

were filed electronically with the Clerk of Court through ECF, and that ECF will send a
Notice of Electronic Filing (NEF) to the following:

Paul H. Myerchin:  pmyerchin@bmmelaw.com

I further certify that a copy of the foregoing documents and the Notice of Electronic
Filing will be mailed by first class mail, postage paid, to the following:

Dated: May 2, 2012                    */s/ Rick L. Volk*
                                       Rick L. Volk
                                       Assistant United States Attorney