IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
NORTHWESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Criminal No. 4:10-cr-070-02 |
| | ) | |
| -vs- | ) | UNITED STATES' SENTENCING |
| | ) | MEMORANDUM |
| DUSTIN MORSETTE, | ) | |
| | ) | |
| Defendant. | ) | |

The United States of America, by and through its attorney, Timothy Q. Purdon, United States Attorney for the District of North Dakota, and Rick L. Volk, Assistant United States Attorney, submits this Sentencing Memorandum to the Court for purposes of addressing sentencing arguments made by the Defendant and presenting a sentencing recommendation to the Court.

In sentencing a defendant convicted of a crime, a court must impose a reasonable sentence upon the defendant after consideration of all of the sentencing factors contained within 18 U.S.C. § 3553(a). United States v. Booker, 125 S. Ct. 738, 757 (2005). The United States Sentencing Guidelines, including policy statements issued by the United States Sentencing Commission, are included among those sentencing factors. See 18 U.S.C. § 3553(a)(4) & (5).

The Eighth Circuit Court of Appeals has stated that a sentencing court must first determine the appropriate Guidelines sentencing range, since that range remains an important factor to be considered in the imposition of a sentence. United States v. Haack,

403 F.3d 997, 1003 (8th Cir. 2005). The guideline sentencing range is calculated in the same manner as it was pre-Booker. Id. Once the applicable range is determined, the court should then decide if a traditional departure is appropriate under Part 5K and/or § 4A1.3 (Departures Based on Inadequacy of Criminal History Category) of the Guidelines. Id. Those considerations will result in a "guidelines sentence." Id. Once the guidelines sentence is determined, the court shall then consider all other statutory sentencing factors set forth in 18 U.S.C. § 3553(a) to determine whether to impose a sentence under the guidelines or a non-guidelines sentence. Id.

     On appeal, the appellate court will first ensure that the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the statutory sentencing factors under 18 U.S.C. § 3553(a), selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence - including an explanation for any deviation from the Guidelines range. United States v. Austad, 519 F.3d 431, 434 (8th Cir. 2008). If the sentence is procedurally sound, the appellate court will then consider the subjective reasonableness of the sentence imposed under an abuse-of-discretion standard. Id. In conducting this review, the Court will take into account the totality of the circumstances, including the extent of any variance from the Guidelines range. Id. If the sentence imposed is outside the Guidelines range, the appellate court may consider the extent of the deviation, but must give due deference to the district

court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance. Id.

## Guideline calculations

The PSR in this case has determined a total offense level 43[1] and criminal history category I, with a resulting guideline sentencing range of <u>life imprisonment</u>. The Defendant presented objections to the United States Probation Office pertaining to the guideline calculations, all of which were adequately addressed in the Addendum to the PSR. The Defendant has not challenged the calculations in his sentencing memorandum, instead choosing to request a downward variance based upon the sentencing factors in 18 U.S.C. § 3553(a). The United States believes that the guideline calculations contained in the PSR are accurate.

## Statutory minimum sentences

Various counts of conviction carry mandatory minimum sentences. Those include the following:

1. <u>Count 1</u>: The Defendant was convicted pursuant to 18 U.S.C. § 2241(a)(1) & (c). Pursuant to § 2241(c), a statutory minimum sentence of 30 years imprisonment applies where the victim is at least 12 years but not yet 16 years, and is at least 4 years younger than the defendant, and the sexual act

---

[1] The total calculated offense level is actually 49. However, pursuant to USSG Ch. 5, Part A, Application Note 2, the offense level is reduced to 43.

3

involved the conduct described in § 2241(a). In this case, the jury found each of these facts to exist beyond a reasonable doubt based on their verdicts in Counts 1 and 2. The jury instructions as to Count 1 did not include reference to the victim or defendant's age; therefore, this Court should make findings concerning the victim's and defendant's ages, and their age difference, before imposing the 30 year mandatory minimum sentence.[2] The trial testimony demonstrated that the offense in this count occurred during the fall of 2009 when the victim (R.U.), who was born in November 1994, was 14 - 15 years old, and the defendant, who was born in June 1989, was 20 years old.

2.  Count 17: The defendant was convicted pursuant to 21 U.S.C. § 861(a)(1) & (b). Accordingly, a statutory minimum of one year imprisonment must be imposed.

3.  Count 18: The defendant was convicted pursuant to 21 U.S.C. § 861(a)(1) & (b). Accordingly, a statutory minimum of one year imprisonment must be imposed.

---

[2]This does not raise an Apprendi issue as these facts do not increase the maximum penalty that may be imposed on this count of conviction. The maximum penalty is life imprisonment.

4. <u>Count 19</u>: The defendant was convicted pursuant to 21 U.S.C. § 861(a)(1) & (b). Accordingly, a statutory minimum of one year imprisonment must be imposed.

5. <u>Count 21</u>: The defendant was convicted pursuant to 18 U.S.C. § 1591(a) & (b)(1). Accordingly, a statutory minimum of 15 years imprisonment must be imposed.

None of the statutes listed above mandating a minimum term of imprisonment require that the minimum term be imposed consecutively to any other sentence. Therefore, the Court has discretion whether to run the sentences concurrently or consecutively. <u>See</u> 18 U.S.C. § 3584. In determining whether to impose concurrent or consecutive sentences, the Court shall consider the sentencing factors contained within 18 U.S.C. § 3553(a). <u>Id</u>.; <u>see</u> also <u>United States v. Lone Fight</u>, 625 F.3d 523, 525 (8th Cir. 2010).

## Defendant's request for downward variance

Through counsel, the defendant has requested a downward variance from the guideline range of life imprisonment to the statutory minimum term of 30 years imprisonment applicable to Count One. The United States objects to this request or any other variance. Such a variance would not fully account for the defendant's criminal actions, nor be a reasonable sentence under the facts and circumstances of this case.

The Court must consider the guideline range, but is permitted to tailor the sentence in light of the other statutory concerns as well. See United States v. Wingate, 415 F.3d 885, 888 (8th Cir. 2005). Those other statutory factors include:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;
(2) the need for the sentence imposed -
   (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
   (B) to afford adequate deterrence to criminal conduct;
   (C) to protect the public from further crimes of the defendant; and,
   (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
(3) the kinds of sentences available;
. . . .
(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and,
(7) the need to provide restitution to any victims of the offense.

See 18 U.S.C. § 3553(a).

The Guidelines do not always account for every factual circumstance which could arise in a given case. United States v. Austad, 519 F.3d 431, 435 (8th Cir. 2008). A district court may consider whether an in-Guidelines sentence fails to appropriately serve the objectives of sentencing. Id. (citing Kimbrough v. United States, 128 S.Ct. 558, 564, 574-75 (2007)). If a sentence is outside the Guidelines range, an appellate court reviewing the sentencing decision may consider the extent of the deviation, but must give due deference to the district court's decision that the statutory sentencing factors, as a whole, justify the extent of the variance. Id. at 434 (citing Gall v. United States, 128 S.Ct.

586, 597 (2007)). A major sentencing variance should be supported by a more significant justification than a minor one; however, the justification need not be precisely proportionate. Id. at 435.

The defendant relies primarily upon his age / youth as the reason for varying downward. While the United States agrees that the Court may consider the defendant's age in its evaluation of the § 3553(a) sentencing factors, the Court should not give that fact the overarching emphasis placed thereon by the defendant. This is not a case of simple immaturity. The evidence at trial demonstrated significant planning, recruitment, and coercive activity by the defendant. The defendant recruited girls and boys much younger than he (some as young as 12 - 13 years old) to be involved in a criminal street gang he organized, with the intent that they engage in drug distribution and sexual activity, including prostitution. In so doing, he utilized force, the threat of force, and physical and mental / emotional coercion to accomplish these objectives. The fact that the conduct was not highly successful as a money-making venture does not negate the criminal thinking behavior engaged in by the defendant, nor the harm intentionally inflicted upon the victims. The activity was not impulsive, at-the-moment risk taking conduct, but instead thoughtful, organized, and planned action that took place over at least a number of months.[3]

---

[3] The trial testimony established that multiple other persons, beyond those identified in the sex and drug counts, were recruited by the defendant. At least one of those persons (M.A.) testified that the defendant threatened harm to her and her family if

The defendant also suggests his true personality is more akin to the description provided by Sheila Lockwood at trial and in the PSR.  Lockwood's testimony hardly depicts a loving, family man.  Lockwood testified that the defendant requested that she engage in prostitution for him, and when she declined the defendant became mad and suggested that A.R. was better than Lockwood.  She also testified that the defendant had previously assaulted her during a disagreement where he threw CD's and DVD's at her, pushed her down, hit her in the side of her ear, and picked her up in the air and yelled at her, saying during this time, "why did you make me do this to you."  This is hardly supportive of the defendant's good character, and is, to the contrary, very descriptive of the same qualities the defendant demonstrated toward his victims.

The PSR, while accurately indicating the defendant is a criminal history category I, lists several instances of prior conduct by the defendant that demonstrates a long-term pattern of anti-social behavior.  For instance, the PSR indicates the defendant engaged in fights while intoxicated (¶ 156), engaged in multiple fights with other persons in order to steal money from them (¶ 154), reacted with violence after being called a name at the conclusion of a football game leading to an out-of-home placement in a group home (¶ 162), and engaged in a physical altercation with a foster parent resulting in another out-of-home placement in a hospital setting for violent tendencies (¶ 178).  Such placements do not appear to have had any effect on curbing the defendant's disruptive activity.  The

---

she talked about the activity.

PSR indicates that while at the Ruth Meier's Adolescent Center ("RMAC"), the defendant became a peer leader of other adolescents by working to be the center of attention, pushing the limits, and acting defiantly toward staff at times (¶ 172). The PSR notes that the RMAC staff believed the defendant got entertainment value out of creating excitement at the center (¶ 172).

The defendant continued to demonstrate poor institutional conduct through the course of this case. While detained pending trial, the defendant misled his cellmate Dakota Jore about the reasons why the defendant was incarcerated, and then convinced Jore to contact A.R. and attempt to get her to lie to federal authorities about the defendant's activities. As part of that conduct, the defendant possessed a cellular phone against jail rules in order to communicate with Jore and send a picture of himself to A.R. (¶ 154).

The defendant has no pro-social support system that this Court can rely upon to suggest the defendant's thinking behavior and actions will ever change. The defendant admittedly has no pro-social peers. He has little to no family support. The defendant's historical conduct suggests that all of his efforts to garner attention center on criminal and/or disruptive behavior. The defendant's response to this seems to be that he will simply grow out of it. The long-term pattern of anti-social behavior, when coupled with the lack of any pro-social support network and poor institutional conduct, indicates the defendant will not to do so.

The defendant suggests that the requirement that he register as a sex offender will adequately provide protection to the community. As this case flatly demonstrates, sex offender registration does not prevent criminal sexual activity from occurring. The co-defendant Medicine Bird Morsette was a registered sex offender, living and registered at the address where his and the defendant's criminal sexual activity took place. That registration did nothing to prevent these acts from occurring.

Finally, the defendant's request for variance effectively suggests that this Court should ignore all of his other criminal activity outside of Count One, which by itself carries a mandatory minimum of 30 years imprisonment. Imposing a sentence as suggested by the defendant would be telling each of the other victims that the conduct toward them did not matter, and would be a gross miscarriage of justice. The United States recognizes that the Court has not imposed life imprisonment in at least one other sexual offense case[4] where the guideline sentencing range was life. However, in that case, there was one victim whom the defendant sexually abused multiple times. That is not the situation here. This defendant had multiple victims of varying ages, and he abused some of them multiple times. Further, the defendant in this case (unlike White Bull) utilized force, threat of force, and coercion to engage in the conduct with most of the victims. The defendant's use of power and control over his victims demonstrates

---

[4] The case referred to is United States v. White Bull, criminal number 1:09-cr-037 (D.ND). The defendant was sentenced to 30 years imprisonment.

violent, predatory sexual behavior.  He should be sentenced in that manner, not as a one-time offender.

Public policy and the facts of this case demand a sentence greater than simply the minimum sentence that must be applied.  The United States Sentencing Commission, in promulgating the Guidelines applicable to sexual offenders, has recognized that individuals who engage in repeated acts of sexual abuse of children should be sentenced to greater punishment than sexual offenders who commit only one such act.  See USSG § 4B1.5, Repeat and Dangerous Sex Offender Against Minors.  Accordingly, an offender who commits a "covered sex crime" (which includes any offense against a minor pursuant to Chapter 109A of Title 18) and who has engaged in a "pattern of activity involving prohibited sexual conduct" is subject to a 5-level enhancement.  See USSG § 4B1.5(b)(1).  A pattern of activity involving prohibited sexual conduct means simply that the offender has on at least two separate occasions engaged in prohibited sexual conduct with a minor.  See USSG § 4B1.5, Application Note 4(B)(i).  This enhancement applies even where the defendant does not have a prior sex offense conviction and the pattern of activity is based solely on the conduct involved in the offenses of conviction for which the defendant is then being sentenced.  United States v. Rojas, 520 F.3d 876, 883 (8th Cir. 2008).

This enhancement, while significant, does not account for the other violent sexual conduct and coercion (resulting in prostitution) directed toward A.R., who was an adult.  Thus, the guideline sentencing range in this case adequately and appropriately accounts

for all of the defendant's criminal conduct.  Imposition of anything less than called for by the guidelines in this case would be unreasonable.

### Recommendation for Sentence

Based on the foregoing, the United States believes that a guideline sentence, that is, <u>life imprisonment</u>, is a reasonable and appropriate sentence based upon all of the sentencing factors contained within 18 U.S.C. § 3553(a).  This sentence should be imposed in each of the counts where the maximum penalty is life imprisonment (Counts 1, 5, 7, 12, 13 and 21).  The maximum penalty in each of the remaining counts should be imposed (20 years for Count 20; 15 years for Counts 2, 3, 4, 6, 8, and 14;  10 years for Counts 17, 18 and 19; and, 5 years for Count 16).  All of the counts should then be run concurrent with each other.  <u>See</u> USSG § 5G1.2.

The Court is also required to impose a term of supervised release on certain counts (despite imposition of life imprisonment).  Title 18, United States Code, Section 3583(a), states that the Court, when imposing a term of imprisonment on a felony, "may" include a term of supervised release as part of the sentence; however, the court "shall" include a term of supervised release if such a term is required by statute.  None of the sexual offense statutes (18 U.S.C. §§ 2241, 2242, 2243, or 1591) specifically indicate a court is required to impose a term of supervised release.  Title 18, United States Code, section 3583(k) authorizes (but does not require) imposition of a term of supervised release of not less than 5 years and up to life for each of the sexual offenses.  Therefore, it does not

appear the Court is required to impose a term of supervised release on the sexual offenses if it imposes a sentence of life imprisonment. If the Court does not impose life imprisonment, the United States recommends the Court impose a lifetime term of supervised release on each of these offenses.

The Court would be required to impose a term of supervised release of at least 2 years on Count 16, the drug conspiracy count, if any term of imprisonment is imposed on that count as 21 U.S.C. § 841(b)(1)(D) requires the same.[5] The Court is also required to impose "***at least twice*** any term of supervised release authorized for a first offense" on Counts 17, 18 and 19. See 21 U.S.C. § 861(b). The authorized term for a violation of 21 U.S.C. §§ 841(a)(1) & 846 (as alleged in each of these counts) is 3 years. Thus, it appears from the statute the Court must impose a 6 year term of supervised release on each of these counts.

The United States understands the Court may be reluctant to impose a life sentence and desire to give the defendant some hope. However, it is the hope of the various victims, as expressed in their impact statements, that they do not have to ever worry about the defendant being on the street again, even many years later. Imprisonment should be utilized to keep those in society locked up who are violent offenders and significant

---

[5] 18 U.S.C. § 846 indicates that the penalty for any conspiracy shall be the same as those prescribed for the offense, the commission of which was the object of the conspiracy. Count 16 indicates the object of the conspiracy was to violate 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(D).

dangers to the public. The defendant, through his criminal conduct in this case, has justifiably earned a life sentence. The defendant used force to sexually assault females (R.U. and A.R.) on three separate occasions. He used the threat of force (rape by a gang leader) to coerce another girl (S.H.) into engaging in a sexual act. He engaged in a sexual act with another girl (P.D.) who was entirely unconscious due to extreme intoxication. He used physical force and mental / emotional coercion to cause A.R. to engage in prostitution, and then attempted to cover this up through manipulation and deceit. He recruited multiple adolescents for a criminal street gang, part of which included engaging in sexual acts with defendant as he instructed. The defendant utilized violence and intimidation to enforce orders as part of the gang activity or to keep others from disclosing those activities to authorities.[6] The victims of the defendant's crimes, and the public in general, deserve imposition of a sentence that will never allow the defendant to sexually victimize another person.

Should the Court not impose a sentence of life imprisonment, the United States requests that the sentence fully account for all of the criminal conduct committed by the defendant as to each victim. Thirty years imprisonment would not do so. That should be the starting point, not the ending point, for imposing sentence in this case. There are

---

[6]R.U. testified that the defendant hit her if she did not do as he asked, and that he threatened to kill her if she went to the police. M.A. testified that the defendant threatened to come after her and her family if she disclosed his efforts to recruit her into the gang.

multiple other counts carrying minimum penalties. When added together, those minimum penalties total 48 years (30 + 15 + 1 + 1 + 1). Even then, much of the total offense conduct would not be included within the sentence, such as the forcible sexual abuse of A.R. (twice), the sexual abuse of P.D., the sexual abuse of S.H., the sexual abuse of A.W., and the obstruction of justice offense. Thus, if the Court does vary downward, the sentence must be greater than 48 years imprisonment to fully account for the total criminal conduct in this case. This is not to suggest the United States agrees to any variance in this case. The United States objects to any downward variance by the Court.

Dated this 8th day of August, 2012.

                TIMOTHY Q. PURDON
                United States Attorney


By:    */s/ Rick L. Volk*
       RICK L. VOLK
       Assistant United States Attorney
       P. O. Box 699
       Bismarck, ND 58502-0699
       (701) 530-2420
       N.D. Bar Board ID No. 04913
       Attorney for United States

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | Criminal No. 4:10-cr-070-02 |
| Plaintiff, ) | |
| ) | CERTIFICATE OF SERVICE |
| -vs- ) | |
| ) | |
| DUSTIN MORSETTE, ) | |
| ) | |
| Defendant. ) | |

I hereby certify that on August 8, 2012, the following documents:

United States' Sentencing Memorandum

Certificate of Service

were filed electronically with the Clerk of Court through ECF, and that ECF will send a Notice of Electronic Filing (NEF) to the following:

Paul H. Myerchin:  pmyerchin@bmmelaw.com

I further certify that a copy of the foregoing documents and the Notice of Electronic Filing will be mailed by first class mail, postage paid, to the following non-ECF participants:


Dated: August 8, 2012              */s/ Rick L. Volk*
                                   Rick L. Volk
                                   Assistant United States Attorney